### AMOS CHASE *vs.* ENOCH G. WILLARD.

On April 30, 1868, the plaintiff, by his agent verbally negotiated with the defendant to sell to the latter 170 barrels and six half-barrels of mackerel, at a specified price, and being all the mackerel stored in agent's store-house. On May 1st, following, the defendant paid the plaintiff's agent $600, and received a written paper reciting the receipt of " $600 on account of mackerel in store No. 10, Long Wharf, at the purchaser's risk as regards fire." The next day the defendant caused each barrel to be examined by a cooper who refilled

with pickle such as needed it, and found two in which the fish had rusted, which were subsequently excepted and carried away by the plaintiff's agent. On or before May 9th, the defendant had paid $2,900 on account of the mackerel. During the night of May 9th, fifty barrels were stolen. Subsequently and at different times the remaining barrels were taken away by the defendant. *Held*, that the sale was complete, and that the loss of the mackerel stolen fell upon the vendee.

ON EXCEPTIONS to the rulings of *Goddard*, J., of the superior court in and for the county of Cumberland.

In addition to the facts stated in the opinion the judge of the superior court found that on June 5th, the defendant sued one Merrow, and two others in trespass for the value of the stolen mackerel, which suit is still pending in the supreme judicial court for this county.

That D. T. Chase, acting as the plaintiff's agent, agreed with the defendant on April 30, that the mackerel were to be delivered to the defendant when he wanted them ; that the defendant did not see them nor have the key of No. 10 until after May 9th, and that no bill of the mackerel was presented to the defendant after May 9th. That D. T. Chase, told the defendant that the firm had no use for No. 10, and the fish might lie there as long as the defendant wanted them, and that the defendant should not be hurried about taking them away or for the payment.

That D. T. Chase, on May 16th, sent to the defendant's counting-room the key of No. 10, with a message to take the remainder of the fish if he wanted them ; but the key was returned without having been used. That D. T. Chase was absent from his counting-room May 21st, and his son consented that the defendant might take the remainder of the fish, then being fifty-eight barrels and four half-barrels ; and that thereupon the defendant returned the key to the plaintiff's son.

The judge further found as matter of fact that the barrels and half-barrels stolen had not been delivered to and accepted by the defendant at the time they were stolen.

As matter of law the judge ruled,

I. That by the terms of the contract as embodied in the receipt

of May 1, 1868, the risk on the mackerel as against thieves, or as regards such taking as is proved in this case, was to remain upon plaintiff.

II. That plaintiff is bound by said receipt of his agent, as fully as if signed by himself.

III. That the commencement of the suit of June 5th, and subsequent action of this defendant thereon, does not estop him from maintaining this defense.

IV. That this action cannot be maintained upon the foregoing facts.

To these rulings the plaintiff alleged exceptions.

*Shepley & Strout*, for the plaintiff.

1. The title and risk of the fish passed to the defendant. Every element of a complete sale existed.

If the effect of the receipt of May 1st was, when given to prevent the risk passing to the defendant, his subsequent acts were sufficient to change the risk, and he is estopped by his acts from setting up this defense against his vender. *Cragin* v. *Carleton*, 21 Maine, 492.

2. As between the vender and vendee, no actual delivery is necessary to complete the vendee's right of property in the article sold. And the risk follows the property; and does not depend upon possession. *Whitehouse* v. *Frost*, 12 East, 613. *Chapman* v. *Searle*, 3 Pick. 38. *Hatch* v. *Lincoln*, 12 Cush. 31. The receipt of May 1st, cannot be construed as a contract limiting or controlling the plaintiff's rights. The memorandum of risk in the receipt was made by D. T. Chase to limit his personal liability, and formed no part of the contract of sale. *Davis* v. *Moore*, 13 Maine, 424. It could control the change of risk when the title to the property passed.

The risk passed by operation of law, and the presumption which sometimes arises in covenants and conveyances, that the designation of certain property operates to exclude all other property of the same class from the effect of the instrument of conveyance,

does not apply in this case. The conduct of the defendant, after the receipt was given, effectually rebuts such presumption.

Then, if the receipt was a contract of sale, and the strictest doctrine of the rule was invoked, it would not be applicable to this case. The risk of fire and thieves were not of the same class, and the designation of one risk would afford no presumption that the parties intended to exclude the other.

*Howard & Cleaves*, for the defendant.

The conclusions of the court below, on matters of fact, are conclusive, and the exceptions to the four rulings embrace all that is before this court.

The fifty barrels and two half-barrels in question " had not been delivered to and accepted by the defendant, at the time of the taking, May 9–10." This fact is proved by the judge and is conclusive.

The plaintiff retained the property and possession until removal. The contract of sale was never executed.

The rulings were correct.

1. The mackerel were to remain as the plaintiff claimed, at the risk of the contemplated purchaser " as regards fire." All other risks were to remain upon the owner and prospective vender. The receipt of May 1st establishes this on the principle that *inclusio unius exclusio est alterius.*

2. The plaintiff is bound by the acts of his agent in the negotiation, and by his receipt in furtherance of the sale.

3. The commencement of the suit against Merrow et als., was an experiment for the benefit of the plaintiff as well as the defendant. If anything should be realized therefrom, it would be for future disposition.

4. The plaintiff never having sold or delivered the property in question to defendant, and the latter never having received it, this action cannot be maintained. *Waldron* v. *Chase*, 37 Maine, 414.

In that case there was an admitted sale and payment and delivery according to a custom proved. But not so in this case. And

here was no proof that the delivery of a part was intended by the parties to be a delivery for the whole. But the contrary was found by the judge of the superior court to be the fact. *Pratt* v. *Chase,* 40 Me. 269. *Dixon* v. *Yates,* 5 Barn. & Ad. 313. *Burney* v. *Poyntz,* 4 Barn. & Ad. 568. *Simmons* v. *Swift,* 5 B. & C. 857.

The terms of the receipt of May 1st show that it was not the intention to make the contract of sale absolute and complete.

APPLETON, C. J. The plaintiff being the owner of one hundred and seventy barrels and six half-barrels of mackerel, stored the same in No. 10, Long wharf, a building belonging to D. T. Chase.

On April 30, 1868, D. T. Chase as agent for the plaintiff, who resided in Baltimore, negotiated verbally with the defendant for the sale of all said mackerel, being all the fish in said building, at a specified price.

On May 1, 1868, the defendant paid D. T. Chase $600, and received from him the following paper:

"PORTLAND, May 1, 1868.

Received from Mr. E. G. Willard $600 on account of mackerel in store No. 10, Long wharf, at the purchaser's risk, as regards fire. · D. T. CHASE."

On May 2d, the defendant sent a cooper to the building where the fish were stored, who examined each barrel, refilled with pickle such as needed it, and found two barrels in which the fish had rusted, which the plaintiff's agent subsequently agreed to except from the sale and which he carried away from the building in which they were deposited.

On May 5th, the defendant sent an order on D. T. Chase for four barrels, which were accordingly delivered.

On and before May 9th, the defendant had made payments to the amount of $2,900 on account of the mackerel.

During the night, between May 9th and 10th, fifty barrels and two half-barrels were taken from the store-house of D. T. Chase by some persons then and ever since unknown.

After this, and at different times, the remaining barrels have been taken away by the defendant.

Upon whom does the loss of the fifty barrels and the two half-barrels, which were stolen, fall?

The evidence shows a perfected sale. The goods to be sold were agreed upon. The purchaser removed a portion. He examined and refilled with pickle the barrels as far as was necessary. This involves the idea of possession. He paid the agent of the vender a large portion of the price as agreed upon.

The plaintiff had nothing to do with store No. 10. He did not own it. ·He merely stored the fish there. When sold they remained there at the purchaser's risk or at that of the depositary. As between the depositary and.the purchaser the risk of the fire was assumed by the latter. So far as relates to the storage, D. T. Chase was acting for himself, in guarding against the risk of fire, not for the vender. Indeed the receipt presupposes a change of title and that the fish had been sold and purchased. Nothing indicates that either party intended that there should be any risk remaining on the vender in regard to the mackerel after somebody else had purchased them.·

After May 1st, the bailee or depositary of the vender became the bailee or depositary of the vendee. *Hatch* v. *Lincoln*, 12 Cush. 31. *Bryans* v. *Nix*, 4 M. & W. 975. In *Tuxwuth* v. *Moore*, 9 Pick. 348, the property sold was with an innkeeper who had a lien upon the same for keeping. The sale was made and the innkeeper was notified by the seller and the purchaser of the sale, and was requested by the latter to keep the ware on his account. "It is objected," says Parker, C. J., "that there was no delivery, and there was none in point of form; but if the contract of sale was *bona fide* and for a valuable consideration, which we take to have been settled by the jury, then if there was a symbolical delivery, or if the plaintiff came to the possession in virtue of the contract, the property passed, not only between vender and vendee, but against everybody." "The law considers it a sufficient delivery by a vender of a chattel to a purchaser, if he regards the holder of it to be a

bailee if such purchaser and parties all assent." *Lane* v. *Sleeper*, 18 N. H. 214.

" When the terms of sale are agreed on, and the bargain is struck, and everything the seller has to do with the goods is complete, the contract of sale becomes absolute without actual payment or delivery, and the property and the risk of accident to the goods vest in the buyer." 2 Kent's Com. 92. All these elements are found in this case, as fully existing prior to the time when the barrels in controversy were stolen. Indeed, here, there was a removal of part of the barrels, a part-payment, the assumption of control over all, every requirement of the statute of frauds has been complied with,—much more, then, should the risk of the loss be on the purchaser, as between him and his vender.

*Exceptions sustained.*

CUTTING, KENT, BARROWS, and TAPLEY, JJ., concurred.